UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

PEOPLE FOR THE AMERICAN WAY
FOUNDATION,

    Plaintiff,

      v.

UNITED STATES DEPARTMENT OF
EDUCATION,

    Defendant.

Civil Action No. 05-751 (CKK)

**MEMORANDUM OPINION**
(September 26, 2007)

Plaintiff, People for the American Way Foundation (hereinafter, "PFAWF"), filed this

suit pursuant to the Freedom of Information Act ("FOIA") against Defendant, the United States

Department of Education (hereinafter, "DOED" or "the Department"), requesting that DOED

disclose and release various categories of documents related to a federally-funded school voucher

program in the District of Columbia.  Presently before the Court are the Parties' cross-motions

for summary judgment, which have been fully briefed.  Based on the aforementioned filings and

the relevant statutes and case law, the Court shall GRANT Plaintiff's [24] Motion for Summary

Judgment and DENY Defendant's [29] Cross-Motion for Summary Judgment.  Accordingly, by

October 19, 2007, Defendant shall release any previously withheld (1) communications between

DOED and the Washington Scholarship Fund ("WSF"); (2) communications between DOED and

the District of Columbia Mayor's Office; and (3) communications between DOED and Westat

and/or Georgetown University.  Furthermore, by November 16, 2007, Defendant shall submit a

new *Vaughn* index with respect to the presumably small subset of documents still withheld

(those including internal DOED deliberations, either on their own or within communications between DOED and WSF) including the following information: (1) for documents including communications between DOED and WSF that have been segregated, the *Vaughn* index shall include the names and affiliations of all senders and recipients for each redacted portion of the document as well as an explanation as to why the redacted portions are both predecisional and deliberative; (2) for documents including communications between DOED and WSF that have been withheld in full because segregation would allegedly reveal DOED's deliberative process, the *Vaughn* index shall include the names and affiliations of all senders and recipients for the entire document, as well as an explanation of both why portions of the document are both predecisional and deliberative and why segregation is not feasible; and (3) for documents that are purely internal to DOED, the *Vaughn* index shall include the names and affiliations of all senders and recipients for each communication in addition to an explanation of why each document is predecisional and deliberative.

## I.  BACKGROUND

On January 23, 2004, Congress passed Public Law No. 108-99, the Consolidated Appropriations Act of 2004, Div. C, Title III, § 301 *et seq.* (the "D.C. School Choice Incentive Act of 2003), establishing the District of Columbia school voucher program.  Pl.'s Stmt. of Mat. Facts ¶ 1; Def.'s Stmt. of Mat. Facts ¶ 1; Def.'s Cross Mot. for Summ. J., Ex. A (D.C. School Choice Incentive Act of 2003 (hereinafter, the "Act")).  The Act creates a five-year program "to provide low-income parents residing in the District of Columbia . . . with expanded opportunities for enrolling their children in higher-performing schools in the District of Columbia."  Act § 302(7).  Pursuant to the Act, eligible D.C. children can receive annual vouchers of up to $7,500

toward tuition and expenses to attend a secular or religious private school.  Act § 307(a)(3)(B).

The Act required DOED to enter into a Memorandum of Understanding with the District of Columbia Mayor's Office regarding "the design of, selection of eligible entities to receive grants under, and implementation of, a program assisted under this title."  Act § 304(c).  The DOED and the D.C. Mayor's Office entered into a Memorandum of Understanding ("MOU") on February 2, 2004.  Def.'s Stmt. of Mat. Facts ¶ 4; Def.'s Cross Mot. for Summ. J., Ex. B (MOU).  The MOU emphasizes the "joint" nature of the voucher program with respect to DOED and the D.C. Mayor's Office.  *See* MOU at 1 ("The MOU is intended to ensure the efficient and effective implementation of the Program, in a manner that incorporates the perspectives of both the Department and the D.C. Government."); *id.* at 2 ("By holding meetings and through other forms of communication . . . the representatives of the Department and the D.C. Government will share ideas and work to reach agreement on issues related to the design and implementation of the Program."); *id.* at 4 (The Department and the D.C. Government will jointly oversee operation of the Program to ensure that it is being carried out in a manner that is consistent with statutory requirements, the approved application or applications, and sound management and educational principles.").

The Washington Scholarship Fund ("WSF") administers the D.C. school voucher program; it was competitively selected to do so by DOED and the D.C. Mayor's Office.  Pl.'s Stmt. of Mat. Facts ¶¶ 17, 18; Def.'s Stmt. of Mat. Facts ¶ 6.  WSF is a private organization located in the District of Columbia, "founded in 1993 in order to assist low-income children in D.C. in attending private schools through private funding."  Pl.'s Stmt. of Mat. Facts ¶ 16.

Pursuant to the Act, DOED and the D.C. Mayor's Office "shall jointly select an

independent entity to evaluate annually the performance of students" in the voucher program. Act § 309(a)(1). *See also* MOU at 1 ("[T]he Act requires the Secretary and the Mayor to select jointly an independent entity to conduct an evaluation of the Program."); *id*. at 4. While there is some disagreement as to the exact role of each of the following entities, the Georgetown School Choice Demonstration Project and Westat are responsible as set forth in a five-year contract (and possibly related subcontracts) for conducting said "independent" evaluations of the voucher program, as required by statute. Pl.'s Stmt. of Mat. Facts ¶ 19; Def.'s Resp. to Pl.'s Stmt. of Mat. Facts 14 and 19; Def.'s Stmt. of Mat. Facts ¶ 7. Per the Act, the "independent" evaluator is responsible for addressing, among other issues, "[t]he success of the programs in expanding choice options for parents," and "[a] comparison of the academic achievement of participating eligible students." Act § 309(4). The information in the independent evaluative reports is to be submitted to DOED, which is obligated to submit to Congress "an annual report on the findings of the [activities and achievement reports submitted by grantees]." *Id.* § 310(a), (b), and (d).

Plaintiff made three separate FOIA requests of Defendant requesting certain documents related to the voucher program. Pl.'s Stmt. of Mat. Facts ¶¶ 2, 6, 11; Def.'s Stmt. of Mat. Facts ¶¶ 10, 14, 18. While Defendant disclosed thousands of documents to Plaintiff, Defendant withheld certain documents pursuant to various FOIA exemptions. Pl.'s Stmt. of Mat. Facts ¶ 3, 4, 13, 14, 15; Def.'s Stmt. of Mat. Facts ¶¶ 11, 15, 16, 19. Plaintiff exhausted its administrative remedies with respect to each FOIA request. Pl.'s Stmt. of Mat. Facts ¶ 5, 10, 12; Def.'s Stmt. of Mat. Facts ¶¶ 13, 17, 20.

Plaintiff filed the present action against Defendant on April 13, 2005, filing an Amended Complaint (now the operative complaint) on May 13, 2005. Plaintiff "seeks the government's

4

release of records pertaining to, *inter alia*, the new federally funded school voucher program in the District of Columbia . . . , under which millions of dollars in public funds are being spent to send children to religious and other private schools in the District of Columbia." Am. Compl. ¶ 2.

After Defendant filed a *Vaughn* index in installments, the Parties filed a [22] Stipulation on January 10, 2006, listing the three categories of records still in dispute and providing five examples from the *Vaughn* index for each of the aforementioned categories. According to the Stipulation, Defendant continues to withhold documents falling into the following three categories pursuant to FOIA Exemption 5: (1) communications between DOED and WSF; (2) communications between DOED and the District of Columbia Mayor's Office; and (3) communications between DOED and Westat and/or Georgetown University. Stipulation ¶¶ 2, 3, and 4.

On January 30, 2006, Plaintiff filed its Motion for Summary Judgment (hereinafter, "Plaintiff's Motion for Summary Judgment"). On April 12, 2006, Defendant filed its Cross Motion for Summary Judgment and Opposition to Plaintiff's Motion for Summary Judgment (hereinafter, "Defendant's Cross Motion for Summary Judgment"). On May 12, 2006, Plaintiff filed its Opposition to Defendant's Cross Motion for Summary Judgment and its Reply to its own Motion for Summary Judgment (hereinafter, "Plaintiff's Opposition"). On May 25, 2006, Defendant filed its Reply to its own Cross Motion for Summary Judgment (hereinafter, "Defendant's Reply"). The Parties' cross-motions are accordingly ripe for disposition. The Court notes that there are no disputes with respect to *material* facts in this case; rather the Parties have differing interpretations of the law as applied to the remaining categories of documents in

dispute.  *See* Def.'s Resp. to Pl.'s Stmt. of Mat. Facts (providing minor clarifications with respect

only to Plaintiff's Statement of Material Facts ¶¶ 3, 13, 14, and 19:  "Defendant submits that

none of these corrections involves a genuine issue of material fact, and that this case may

properly be resolved by summary judgment procedure").

## II.  LEGAL STANDARD

In reviewing a motion for summary judgment under the FOIA, the Court must conduct a

*de novo* review of the record.  *See* 5 U.S.C. § 552(a)(4)(B).  In the FOIA context, "*de novo*

review requires the court to 'ascertain whether the agency has sustained its burden of

demonstrating that the documents requested are not "agency records" or are exempt from

disclosure under the FOIA.'"  *Assassination Archives & Research Ctr. v. Cent. Intelligence*

*Agency*, 334 F.3d 55, 57 (D.C. Cir. 2003) (quoting *Summers v. Dep't of Justice*, 140 F.3d 1077,

1080 (D.C. Cir. 1998)).

Summary judgment is proper when "the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter

of law."  Fed. R. Civ. P. 56(c).  A genuine issue of material fact exists only when there is

sufficient evidence such that a reasonable juror could find for the party opposing the motion.

*Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 251-52 (1986).  Furthermore, entry of summary

judgment is mandated against a party if, after adequate time for discovery and upon motion, the

party fails to make a showing sufficient to establish the existence of an element essential to that

party's case, and on which that party will bear the burden of proof at trial.  *Celotex Corp. v.*

*Catrett*, 477 U.S. 317, 322 (1986).  Under FOIA, all underlying facts and inferences are analyzed

6

in the light most favorable to the FOIA requester; as such, only after an agency seeking summary

judgment proves that it has fully discharged its FOIA obligations is summary judgment

appropriate.  *Moore v. Aspin*, 916 F. Supp 32, 35 (D.D.C. 1996) (citing *Weisberg v. Dep't of*

*Justice*, 705 F.2d 1344, 1350 (D.C. Cir. 1983)).

Congress enacted FOIA for the purpose of introducing transparency to government

activities.  *See Stern v. Fed. Bureau of Investigation*, 737 F.2d 84, 88 (D.C. Cir. 1984).  Congress

remained sensitive, however, to the need to achieve balance between this objective and the

vulnerability of "legitimate governmental and private interests [that] could be harmed by release

of certain types of information."  *Critical Mass Energy Project v. Nuclear Regulatory Comm'n*,

975 F.2d 871, 872 (D.C. Cir. 1992); *see also Summers v. Dep't of Justice*, 140 F.3d 1077, 1079

(D.C. Cir. 1998).  Accordingly, FOIA provides nine exemptions pursuant to which an agency

may withhold requested information.  *See* 5 U.S.C. §§ 552(a)(4)(B), (b)(1)-(9).  The agency must

demonstrate the validity of any exemption that it asserts.  *See id.*; *Beck v. Dep't of Justice*, 997

F.2d 1489, 1491 (D.C. Cir. 1993) ("[c]onsistent with the purpose of the Act, the burden is on the

agency to justify withholding requested documents").  To satisfy this burden, the agency may

provide a plaintiff "with a *Vaughn* index, which must adequately describe each withheld

document, state which exemption the agency claims for each withheld document, and explain the

exemption's relevance."  *Johnson v. Exec. Office for U.S. Att'ys*, 310 F.3d 771, 774 (D.C. Cir.

2002); *see also Vaughn v. Rosen*, 484 F.2d 820, 827 (D.C. Cir. 1973).  In addition, summary

judgment may be granted on the basis of the agency's accompanying affidavits or declarations if

they describe "the justifications for nondisclosure with reasonably specific detail, demonstrate

that the information withheld logically falls within the claimed exemption, and are not

7

controverted by either contrary evidence in the record nor evidence of agency bad faith."

*Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981).  These affidavits may be

submitted by an official who coordinated the search, and need not be from each individual who

participated in the search.  *See SafeCard Servs. v. Sec. & Exch. Comm'n*, 926 F.2d 1197, 1200

(D.C. Cir. 1991).

There is no set formula for a *Vaughn* index; so long as the agency provides the Court with

materials providing a "reasonable basis to evaluate the claim of privilege," the precise form of

the agency's submission – whether it be an index, a detailed declaration, or a narrative – is

immaterial.  *Gallant v. Nat'l Labor Relations Bd.*, 26 F.3d 168, 173 (D.C. Cir. 1994) (internal

citations omitted).  While *Vaughn* indices are generally discretionary, affidavits alone may not

suffice once it is established that records and documents are in a governmental agency's

possession.  *Miscavige v. Internal Revenue Serv.*, 2 F.3d 366, 368 (11th Cir. 1993) (citing

*Stephenson v. Fed. Bureau of Investigation*, 629 F.2d 1140, 1144-45 (5th Cir. 1980)).  Therefore,

it is in a governmental agency's best interest to provide a *Vaughn* index when claiming privilege,

should it seek to satisfy its disclosure burden.

Furthermore, the agency must detail what proportion of the information in a document is

non-exempt and how that material is dispersed throughout the document.  *Mead Data Cent. Inc.*

*v. U.S. Dep't of Air Force*, 566 F.2d 242, 261 (D.C. Cir. 1977).  Any non-exempt information

that is reasonably segregable from the requested records must be disclosed.  *Ogelsby v. U.S.*

*Dep't of Army*, 79 F.3d 1172, 1178 (D.C. Cir. 1996).  In addition, district courts are required to

consider segregability issues *sua sponte* even when the parties have not specifically raised such

claims.  *Trans-Pac. Policing Agreement v. U.S. Customs Serv.*, 177 F.3d 1022, 1028 (D.C. Cir.

1999).

In opposing a motion for summary judgment, a party must offer more than conclusory statements. *See Broaddrick v. Exec. Office of President*, 139 F. Supp. 2d 55, 65 (D.D.C. 2001) (citing *Laningham v. U.S. Navy*, 813 F.2d 1236, 1241 (D.C. Cir. 1987)). Indeed, a plaintiff pursuing an action under FOIA must establish that either: (1) the *Vaughn* index does not establish that the documents were properly withheld; (2) the agency has improperly claimed an exemption as a matter of law; or (3) the agency has failed to segregate and disclose all non-exempt material in the requested documents. *See Perry-Torres v. Dep't of State*, 404 F. Supp. 2d 140, 142 (D.D.C. 2005); *Twist v. Ashcroft*, 329 F. Supp. 2d 50, 53 (D.D.C. 2004) (citing *Piper & Marbury, LLP v. U.S. Postal Serv.*, Civ. No. 99-2383, 2001 WL 214217, at *2 (D.D.C. Mar. 6, 2001)).

### III.  DISCUSSION

Pursuant to the Stipulation and cross motions submitted by the Parties, only three categories of documents remain at issue. Defendant claims (and Plaintiff contests) that documents falling into the following three categories are exempt from disclosure pursuant to FOIA Exemption 5 because they do not constitute "inter-agency" or "intra-agency" documents: (1) communications between DOED and WSF; (2) communications between DOED and the District of Columbia Mayor's Office; and (3) communications between DOED and Westat and/or Georgetown University. Stipulation ¶¶ 2, 3, and 4. The Court shall address the application of FOIA Exemption 5 to each of these categories of documents in turn after addressing the underlying legal standard.

A.     *Exemption 5 only applies to "inter-agency" or "intra-agency" documents.*

FOIA Exemption 5 protects "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). Courts have "construed this exemption to encompass the protections traditionally afforded certain documents pursuant to evidentiary privileges in the civil discovery context," including "materials which would be protected under the attorney-client privilege, the attorney work-product privilege, or the executive 'deliberative process privilege.'" *Taxation With Representation Fund v. Internal Revenue Serv.,* 646 F.2d 666, 676 (D.C. Cir. 1981) ("*TWRF* ") (citations omitted). *See also Tax Analysts v. Internal Revenue Serv.*, 294 F.3d 71, 76 (D.C. Cir. 2002).

The deliberative process privilege, invoked here by Defendant, covers "documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *NLRB v. Sears, Roebuck & Co.,* 421 U.S. 132, 150 (1975). In contrast, final statements of agency policy or statements explaining actions already taken by an agency are not protected by the deliberative process privilege. *Tax Analysts*, 294 F.3d at 80. "The deliberative process privilege protects agency documents that are both predecisional and deliberative." *Judicial Watch, Inc., v. FDA*, 449 F.3d 141, 151 (D.C. Cir. 2006).

However, at the outset (and at issue in this case), the Court must determine if the documents at issue are "inter-agency" or "intra-agency" documents. *See* 5 U.S.C. § 522(b)(5); *Dep't of the Interior & Bureau of Indian Affairs v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 9 (2001) ("The point is not to protect Government secrecy pure and simple, however, and the first condition of Exemption 5 is no less important than the second; the communication must

be 'inter-agency or intra-agency.'  5 U.S.C. § 522(b)(5).  Statutory definitions underscore the

plainness of this text.").

        B.      *Documents exchanged between DOED and the D.C. Mayor's Office are not*
                      *exempt from disclosure pursuant to Exemption 5 because they do not constitute*
                      *inter-agency or intra-agency documents.*

        Pursuant to 5 U.S.C. § 552(f), an "agency" "as defined in section 551(1) of this title

includes any executive department, military department, Government corporation, Government

controlled corporation, or other establishment in the executive branch of the Government

(including the Executive Office of the President), or any independent regulatory agency[.]"  5

U.S.C. § 552(f)(1).  However, it is clear on the face of 5 U.S.C. § 551(1) that an "agency" must

be a *federal* entity, and to the extent that the non-state status of the District of Columbia creates

any ambiguity, the definition of "agency" explicitly does not include the District of Columbia.  5

U.S.C. § 551(1) ("'agency' means each authority of the Government of the United States,

whether or not it is within or subject to review by another agency, but does not include . . . (D)

the government of the District of Columbia").

        Defendant does not dispute that "a state agency is generally not an agency for purposes of

the FOIA."  Def.'s Cross Mot. for Summ. J. at 14.  Rather, Defendant argues that "in this case

the communications between the Department and the D.C. Mayor's Office constitute 'intra-

agency' documents for purposes of Exemption (b)(5) because their relationship was created by a

Congressional mandate."  *Id.*  Defendant cites only two cases in support of its legal position,

neither of which is precedential in this or even in its own circuit:  *Citizens for Pennsylvania's*

*Future v. Department of the Interior*, 218 F.R.D. 441 (M.D. Pa. 2003), and *General Electric*

*Company v. United States Environmental Protection Agency*, 18 F. Supp. 2d 138 (D. Mass.

1998).  As *Citizen's for Pennsylvania's Future* was vacated by the district court pursuant to an

order of the Third Circuit, the Court shall not consider the reasoning therein.  *See* Pl.'s Opp'n,

Ex. A (*Citizens for Pa.'s Future*, Civ. No. 01-2403 (Aug. 23, 2004)).  Furthermore, while one

case from the District of Massachusetts does not a rule make, the Court nonetheless finds that

*General Electric* does not stand for the proposition that the creation of a federal agency/state

agency relationship by congressional mandate exempts all communications between said

agencies pursuant to Exemption 5.  In *General Electric*, the court addressed the question of

"whether the retained copies of communications sent from a federal agency to a state agency in

the course of a coordinated regulatory effort may be withheld on the basis of the federal

executive deliberative process privilege."  *Gen. Elec.*, 18 F. Supp. 2d at 141.  The court

recognized that "there is no broadly applicable state-federal 'co-regulatory' privilege, nor does

Exemption 5 contemplate one."  *Id.*  However, the court held that in order to protect the federal

deliberative process privilege in the co-regulatory situation before it (wherein the EPA was

obligated to work with state environmental agencies), documents would be deemed exempt

"[o]nly when the state agency is, in effect, drawn into the deliberative process and consulted as to

the outcome," including documents constituting federal requests for data from a state agency or

using data from a state agency per a federal request.  While this Court does not find the reasoning

in *General Electric* to be persuasive or supported by the statutes or existing case law, it

nonetheless notes that the application of Exemption 5 therein is much narrower than that

contemplated by Defendant in this case.

     The more legitimate dispute between the Parties is whether the D.C. Mayor's Office

served as a "consultant" to DOED such that communications between the two would be

considered intra-agency documents.  In other words, the Parties argue whether the "consultant corollary" as defined in *Klamath* would apply to the relationship between DOED and the Mayor's Office.  *See Klamath*, 532 U.S. 1 (2001).  While the Court finds that neither Party's interpretation of *Klamath* is correct, it holds that the D.C. Mayor's Office does not serve as a consultant to DOED in this case such that communications between the two entities are not exempt from disclosure as intra-agency documents.

In *Klamath*, the Supreme Court held that documents addressing tribal interests submitted by Indian Tribes at the request of the Department of the Interior in the course of water rights allocation proceedings did not constitute intra-agency documents and accordingly were not exempt from disclosure pursuant to Exemption 5.  *Id.*  While the Court noted that "the fact about the consultant that is constant in the typical cases is that the consultant does not represent an interest of its own, or the interest of any other client, when it advises the agency that hires it," *id.* at 10-11, it held that the distinction was "even sharper" in the case before it as the Tribes acted as "self advocates at the expense of others seeking benefits inadequate to satisfy everyone," *id.* at 12.

*Klamath* explicitly distinguished the following two D.C. Circuit cases in a footnote: *Public Citizen, Inc. v. Department of Justice*, 111 F.3d 168 (D.C. Cir. 1997), and *Ryan v. Department of Justice*, 617 F.2d 781 (D.C. Cir. 1980).  In *Public Citizen*, the circuit held that communications between the National Archives and Records Administration (and the Department of Justice) and former Presidents were exempt from disclosure pursuant to Exemption 5, as per the Presidential Records Act, former Presidents advise the agency with respect to the agency's restriction of records.  *See Pub. Citizen*, 111 F.3d at 127.  In *Ryan*, the

circuit held that Senators' responses to questionnaires sent by the Attorney General inquiring about their procedures for selecting and recommending judicial nominees constituted intra-agency communications. *See Ryan*, 617 F.2d at 790 ("When an agency record is submitted by outside consultants as part of the deliberative process, and it was solicited by the agency, we find it entirely reasonable to deem the resulting document to be an 'intra-agency' memorandum for purposes of determining the applicability of Exemption 5.").[1]  The Supreme Court in *Klamath* did not expressly abrogate *Ryan* and *Public Citizen*, but noted that they fell outside of the normal ambit of cases exemplifying the consultant corollary because the entities considered to be "consultants" had outside interests:

> Courts of Appeals have recognized at least two instances of intra-agency consultants that arguably extend beyond what we have characterized as the typical examples.  In *Public Citizen, Inc. v. Department of Justice*, 111 F.3d 168 (C.A.D.C. 1997), former Presidents were so treated in their communications with the National Archives and Records Administration, even though the Presidents had their own, independent interests, *id.*, at 171.  And in *Ryan v. Department of Justice*, 617 F.2d 781 (C.A.D.C. 1980), Senators' responses to the Attorney General's questionnaires about the judicial nomination process were held exempt, even though we would expect a Senator to have strong personal views on the matter.  We need not decide whether either instance should be recognized as intra-agency, even if communications with paid consultants are ultimately so treated.  As explained above, the intra-agency condition excludes, *at the least*, communications to or from an interested party seeking a Government benefit at the expense of other applicants.

*Klamath*, 532 U.S. at 12 n.4 (emphasis added).  Thus, while *Klamath* was narrowly decided on the grounds that the Tribes both communicated with the Government in their own interest and

---

[1]  *See also Formaldehyde Inst. v. Dep't of Health and Human Servs.*, 889 F.2d 1118, 1120 (D.C. Cir. 1989) (holding that a review letter by outside referees of a report submitted by a CDC employee for publication in the American Journal of Epidemiology was predecisional and deliberative and accordingly could be withheld pursuant to Exemption 5:  "The Review Letter is predecisional because it preceded the agency's decision whether and in what form to publish the Report.  The letter is part of HHS' deliberative process because the agency secured review commentary in order to make that decision.").

acted as self-advocates seeking benefits at the expense of others and therefore *certainly* did not

qualify as "consultants," the instant Court does not agree that *Klamath* stands for the proposition

that communications must definitively meet these two criteria to fall outside of Exemption 5's

shield from disclosure.  However, the Court nonetheless notes that the D.C. Mayor's Office

represents its own constituency of schools and citizens, and that the D.C. Mayor's Office

advocates the interests of its constituents over the five-year duration of the D.C. school voucher

program with an exclusionary stake in said program, which is temporarily funded in the District

of Columbia as opposed to elsewhere in the United States.

Defendant states that "*Ryan* and *Formaldehyde Institute* stand for the proposition that

Exemption (b)(5) permits an agency to withhold communications from an outside agency so long

as those communications play a part in the agency's deliberative process."  Def.'s Cross Mot. for

Summ. J. at 22.  However, Defendant's interpretation of the pre-*Klamath* D.C. Circuit cases is

overly broad.  *See Physicians Comm. for Responsible Medicine v. Nat'l Inst. of Health*, 326 F.

Supp. 2d 19, (D.D.C. 2004), *appeal dismissed*, 2004 WL 2009380 (D.C. Cir. Sept. 9, 2004)

(holding that in *Ryan* and *Public Citizen*, the documents at issue were considered intra-agency

records "because the documents prepared by the outside consultants essentially played the same

role in the agency's deliberative process as documents that would be prepared by the agency's

own personnel.").  The Court acknowledges that "[t]he Supreme Court in *Klamath* expressly

declined to overrule *Ryan*," and while "[i]t may well be that the D.C. Circuit will read *Klamath*

as an instruction to narrow its view of 'intra-agency' communications," *Ryan* at present remains

good law.  *Lardner v. U.S. Dep't of Justice*, Civ. No. 03-180, 2005 WL 758267 at * 15 (D.D.C.

Mar. 31, 2005).  In *Lardner*, for example, the court held that recommendation letters solicited by

the Office of the Pardon Attorney from judges and special prosecutors relating to pardon requests

were exempt from disclosure pursuant to Exemption 5, constituting intra-agency records.  *Id.* at

*13-15.  The court found that withholding such documents fell "entirely within the rule of *Ryan*,"

and was "fully consistent with the reasoning in *Klamath*."  *Id.* at *15.  However, unlike *Lardner*,

the facts of the instant case fall outside of the ambit of *Ryan* and *Formaldehyde Institute* because

DOED and the D.C. Mayor's Office share responsibility for the D.C. voucher program such that

information is not being conveyed to DOED to unilaterally make ultimate decisions based on the

D.C. Mayor's Office's advice.  As noted by Plaintiffs, "DOED and the Mayor's Office jointly

oversee WSF's administration of the D.C. school voucher program."  Pl.'s Mot. for Summ. J. at

27.  *See* Act § 304(c); *supra* at 2-3.  It is clear from both the Act and the MOU that DOED has

obligations to the Mayor's Office just as the Mayor's Office has obligations to DOED.  *See* MOU

at 5 ("[T]he Department agrees to . . . [w]ork with the D.C. Government, in its joint oversight

capacity, to develop the appropriate standards of accountability and performance measures for all

entities awarded grants under the Act."); *id.* at 6 ("Both the Department and the D.C.

Government agree to . . . [g]rant each party access to any and all data and other information

collected for evaluation purposes.").  Accordingly, acknowledging that *Ryan* and *Formaldehyde

Institute* continue to guide this Court, there simply is no precedent for withholding documents

under Exemption 5 where a federal agency and a non-federal entity share ultimate decision-

making authority with respect to a co-regulatory project.  *See also Ctr. for Int'l Envtl. Law v.

Office of the U.S. Trade Representative*, 237 F. Supp. 2d 17, 20, 24-30 (D.D.C. 2002) (holding

that documents pertaining to the United States-Chile Free Trade Agreement that were produced

by or exchanged with Chile or that relate to communications or meetings with Chile are not

16

exempt from disclosure pursuant to Exemption 5).

      C.      *Documents exchanged between DOED and Westat or between DOED and the Georgetown School Choice Demonstration Project[2] are not exempt from disclosure pursuant to Exemption 5 because they do not constitute inter-agency or intra-agency documents.*

According to Defendant, "the communications of a third-party consultant or contractor, hired to provide expert advice to an agency, may be considered inter-agency or intra-agency for the purposes of Exemption 5" as long as the outside consultant does not both have an interest in the outcome of the decision making process *and* is in competition with other parties. Def.'s Cross Mot. for Summ. J. at 13 (citing *Klamath*, 531 U.S. at 12). *See supra* at 12-16. However, neither Westat nor Georgetown was "hired to provide expert advice to an agency." Rather, each was awarded either a contract or subcontract to independently evaluate the voucher program. As indicated by Plaintiff, "Georgetown and Westat are pursuing independent research goals that, by definition, are distinct from the goals of voucher-supporting DOED . . . ." Pl.'s Mot. for Summ. J. at 32. *See also* http://www.georgetown.edu/research/scdp (visited Sept. 22, 2007) ("The national team of researchers, institutional research partners, and staff of the SCDP are devoted to the rigorous and unbiased evaluation of school choice programs and other school improvement efforts across the country."). While Defendants argue that pursuant to *Klamath*, having an independent objective is not enough to disqualify records as "intra-agency," as the consultant entity purportedly must be in competition with other entities for a distinct set of benefits, the Court makes two observations in this vein. First of all, Westat and Georgetown do not fall

---

[2] While a third entity, Chesapeake Research Associates, is referenced sporadically in the filings, the Court presently has insufficient information before it relating to this entity to find that documents between DOED and Chesapeake Research Associates either should be disclosed or may be withheld pursuant to Exemption 5.

within the ambit of *Klamath* or related D.C. Circuit cases because their statutory mandate–to

independently evaluate the voucher program–by definition is such that they "evaluate" rather

than "advise" the joint DOED-D.C. Mayor's Office program.  Said evaluations are summarized

and submitted to Congress pursuant to statute.  *See* Act § 310(a), (b), and (d).  Unlike

*Formaldehyde Institute*, there is no expectation that Westat or Georgetown's evaluations

constitute "confidential" reviews subject to use by the agency.  *See Formaldehyde Inst.*, 889 F.2d

at 1124.  Second, even if Westat and Georgetown were to be evaluated under the contractor

corollary, the "independent evaluator" contract was awarded on a competitive basis and remains

in place for only five years; while five years constitutes the duration of the present voucher

program, presumably Westat and Georgetown have an interest in being awarded a second

contract (at the exclusion of other candidates) if the D.C. school voucher program is renewed by

Congress.  *See Physician's Comm.*, 326 F. Supp. 2d at 29-30 ("[A grant recipient] was not acting

on behalf of the government when he received the grant and conducted his research . . . [He] was

[also] in competition with other grant applicants and had a self-interest in being awarded the

grant.").

        While Defendant's filings (and the underlying affidavits) are not entirely clear on this

point, it appears that Westat may have been awarded two separate contracts–the second of which

was to independently evaluate the voucher program (as discussed above), but the first of which

was "a delivery order under the Multiple Award Task Order (MATO) to provide immediate

technical assistance to the program implementer (the Washington Scholarship Fund), including

the design of the application form and the evaluation of the first-year lottery."  Def.'s Cross Mot.

for Summ. J. at 23 (citing Declaration of Angela Arrington[3] ¶¶ 18-19).  Furthermore, it appears

from the Arrington Declaration that Westat worked with DOED to provide technical assistance

to WSF.  *See* Arrington Decl. ¶¶ 18, 21, 61.  *See also* Pl.'s Opp'n at 16-17.  Accordingly, even

under the first contract awarded to Westat, it appears that Westat was hired to advise WSF (not

DOED), and that under the second five-year contract, Westat was charged with independently

evaluating the voucher program.  Accordingly, pursuant to the terms of both of these contracts

(as set forth by Defendant, as the Court does not have access to either actual contract in any of

the filings), neither Westat nor Georgetown were hired to or actually advised DOED directly, as

WSF was charged with implementing the voucher program.

> D.      *Defendant has conceded that documents exchanged between DOED and WSF are
>         not exempt from disclosure; Defendant must provide a new* Vaughn *index for non-
>         released documents containing internal DOED discussions.*

In Defendant's Cross-Motion for Summary Judgment, Defendant concedes that

communications between DOED and WSJ are not inter-agency or intra-agency records such that

Exemption 5 does not apply.  *See* Def.'s Cross Mot. for Summ. J. at 2 ("As for the

communications with the Washington Scholarship Fund, the Department released all of the

communications with this entity–to the extent that the communications were segregable from

information otherwise exempted from disclosure.").  *See also id.* at 25 ("The Department

---

[3]  While Plaintiff challenges Defendant's reliance on Ms. Arrington's affidavit on the
grounds that Ms. Arrington "lacks the personal knowledge to testify as to . . . most of the factual
matters asserted in that document," because "by her own account, Ms. Arrington is a Department
FOIA Officer who does not work in any capacity in any of the Department's program offices that
are involved in the running of the D.C. voucher program," the Court need not address this
concern in light of the Court's determination that Exemption 5 does not provide proper grounds
for withholding the categories of documents in dispute in this case such that said documents shall
be released to Plaintiff.

recognized that WSF did not occupy a consulting relationship with the Department and consequently released records of most of its communications with WSF.  Arrington Decl. at ¶ 58.").  However, Defendant admits that Defendant segregated and withheld internal DOED discussion from such documents, and sometimes even withheld documents in their entirety including "internal communications containing WSF questions with the Department's answers" where they could not be redacted "without revealing the Department's focus of deliberations." *Id.* at 26-27.  *See also* Def.'s Reply at 4.  While Defendant claims to have "demonstrated careful attention to the mandate of FOIA to segregate and release non-privileged portions of records to the extent possible," Def.'s Reply at 4, this allegedly "careful attention" is not reflected in the *Vaughn* index, where no mention is made that documents were withheld in full because they could not be adequately segregated.  *See* Pl.'s Opp'n at 7 ("[T]he *Vaughn* index entries make no reference to segregability, but simply state that these communications between WSF and DOED have been withheld on the basis of Exemption 5.").

Furthermore, with respect to "records on the index that appear to be purely internal DOED records," Defendant effectively admits that its *Vaughn* index did not include all parties to each communication such that the Court cannot discern whether such documents have been disclosed to any of the afore discussed entities or other outside parties.  *See* Pl.'s Opp'n at 4-5 ("DOED has not addressed–but does not dispute–its failure to list *all* recipients of each withheld communication in its *Vaughn* index entries. . . .  If more than five individuals received a particular communication, the Department simply omitted those additional recipients from the *Vaughn* index.").

"Before approving the application of a FOIA exemption, the district court must make

20

specific findings of segregability regarding the documents to be withheld." *Sussman v. U.S.*

*Marshalls Serv.*, 494 F.3d 1106, 1116 (D.C. Cir. 2007).  While "[a]gencies are entitled to a

presumption that they complied with the obligation to disclose reasonably segregable material,"

"[i]f the district court approves withholding without such a finding, remand is required even if

the requester did not raise the issue of segregability before the court." *Id.* at 1116-17.  In light of

Defendant's heavy hand with privilege determinations, *see e.g.,* Pl.'s Mot. for Summ. J. at 16

(noting that per Defendant's *Vaughn* index (Bates Nos. 6314-6320), Defendant withheld the

MOU with the D.C. Mayor's Office despite the document's public availability and availability on

DOED's website),[4] the Court shall require Defendant to submit a new *Vaughn* index with respect

to the presumably small subset of documents still withheld (those including internal DOED

deliberations, either on their own or within communications between DOED and WSF) including

the following information:  (1) for documents including communications between DOED and

WSF that have been segregated, the *Vaughn* index shall include the names and affiliations of all

senders and recipients (*e.g.*, "name of sender (agency or organization)") for each redacted portion

of the document as well as an explanation as to why the redacted portions are both predecisional

and deliberative; (2) for documents including communications between DOED and WSF that

have been withheld in full because segregation would allegedly reveal DOED's deliberative

process, the *Vaughn* index shall include the names and affiliations of all senders and recipients

for the entire document, as well as an explanation of both why portions of the document are both

predecisional and deliberative and why segregation is not feasible; and (3) for documents that are

---

[4]  *See* Def.'s Cross Mot. for Summ. J. at 16 n.3 ("The [MOU] was inadvertently not
disclosed to the Plaintiff.").

purely internal to DOED, the *Vaughn* index shall include the names and affiliations of all senders and recipients for each communication in addition to an explanation of why each document is predecisional and deliberative.

> E.      *The Court need not address Plaintiff's "waiver" arguments.*

Plaintiff makes the argument that prior to Plaintiff's publication of a critical report on the D.C. voucher program, Defendant released a number of documents in the above categories such that the Court should construe Defendant's privilege with respect to the documents at issue to be waived. *See* Pl.'s Mot. for Summ. J. at 4, 33-36.  The Court shall not address Plaintiff's "waiver" argument in light of its holding that said documents cannot be withheld pursuant to Exemption 5.

## IV.  CONCLUSION

Based on the above reasoning, the Court shall GRANT Plaintiff's [24] Motion for Summary Judgment and DENY Defendant's [29] Cross-Motion for Summary Judgment. Accordingly, by October 19, 2007, Defendant shall release any previously withheld (1) communications between DOED and WSF; (2) communications between DOED and the District of Columbia Mayor's Office; and (3) communications between DOED and Westat and/or Georgetown University.  Furthermore, by November 16, 2007, Defendant shall submit a new *Vaughn* index with respect to the presumably small subset of documents still withheld (those including internal DOED deliberations, either on their own or within communications between DOED and WSF) including the following information:  (1) for documents including communications between DOED and WSF that have been segregated, the *Vaughn* index shall include the names and affiliations of all senders and recipients for each redacted portion of the

document as well as an explanation as to why the redacted portions are both predecisional and deliberative; (2) for documents including communications between DOED and WSF that have been withheld in full because segregation would allegedly reveal DOED's deliberative process, the *Vaughn* index shall include the names and affiliations of all senders and recipients for the entire document, as well as an explanation of both why portions of the document are both predecisional and deliberative and why segregation is not feasible; and (3) for documents that are purely internal to DOED, the *Vaughn* index shall include the names and affiliations of all senders and recipients for each communication in addition to an explanation of why each document is predecisional and deliberative.  An Order accompanies this Memorandum Opinion.


Date:   September 26, 2007


                                              /s/
                                         COLLEEN KOLLAR-KOTELLY
                                         United States District Judge